George SQUILLACOTE, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

RACINE BUILDING & CONSTRUCTION TRADES COUNCIL, AFL–CIO; Asbestos Workers Union Local No. 19; Boilermakers Union Local No. 107; Bricklayers & Tile Setters Union Local No. 4; Building Laborers Union Local No. 108; Carpenters Union Local No. 91; Cement Finishers Union Local No. 845; Electrical Workers Union Local No. 430; Glaziers Union Local No. 1204; Iron Workers Union Local No. 8; Lathers Union Local No. 232; Operating Engineers Union Local No. 139; Painters Union Local No. 108; Plasterers Union Local No. 428; Plumbers & Steamfitters Union Local No. 118; Roofers Union Local No. 128; Sheet Metal Workers Union Local No. 35; and Teamsters Union Local No. 43, Respondents.

Civ. A. No. 80–C–47.

United States District Court,
E. D. Wisconsin.

Jan. 29, 1980.

Philip E. Bloedorn and Gerald McKinney, N.L.R.B., Milwaukee, Wis., for petitioner.

Ira S. Epstein, Goldberg, Previant & Uelmen, Milwaukee, Wis., for respondents.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This case is here on a petition filed by the Regional Director of the National Labor Relations Board (NLRB). The petition seeks a temporary injunction pursuant to § 10(*l*) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 160(*l*). Following the filing of the petition on January 16, 1980, exhibits, affidavits and briefs were filed by the parties, and a hearing conducted by the court on January 24, 1980. The court took the matter under advisement.

The dispute before the court arises out of an NLRB investigation into "unfair labor practices" charges brought by A.R.S. Builders, Inc., a general contractor, against the respondents, various labor unions and the Racine Building and Construction Trades Council. Upon completion of the investigation, the Board issued a complaint charging violations of §§ 8(b)(4)(i), (ii)(A) and (B) of the Act. The NLRB then brought this petition seeking preliminary injunction relief.

A.R.S. is the general contractor engaged in the construction of a Burger King Restaurant at 3454 Douglas Avenue, Racine, Wisconsin. A.R.S. is a "non-union" contractor, in that it has no employees who are represented by a labor union. It subcontracts all of the construction work to both union and non-union contractors.

Since early December, A.R.S. has been embroiled in a labor dispute with the respondents concerning the building of the Burger King. Pickets have been present on the jobsite since December 7th, 1979. Construction has come to a standstill.

The dispute revolves around the use of subcontractors by A.R.S. who have not entered into a collective bargaining agreement with any labor union affiliated with respondent Racine Building and Construction Trades Council.

A.R.S. has commenced a separate action (No. 80–C–39) alleging antitrust violations against most of the same respondents named in this action. A petition for a temporary restraining order in that case was denied by this court on January 18, 1980, as was a separate petition by A.R.S. to intervene in this action. However, as "charging party" before the NLRB, counsel for A.R.S. has appeared in this case and presented evidence as permitted by § 10(*l*) of the Act.

The alleged unfair labor practices under § 8(b)(4)(B) involve claimed threats, inducements and coercive tactics designed to prevent others from doing business with A.R.S. The allegations under § 8(b)(4)(A) center on the undisputed attempt by respondents to have A.R.S. enter into an agreement whereby it will subcontract work only to subcontractors who have collective bargaining agreements with unions affiliated with the Trades Council. The agreement was formally proposed to A.R.S. at a meeting on December 19, 1979. A.R.S. filed its charges with the NLRB the next day. The NLRB investigation followed, and its petition for injunctive relief was filed on January 16, 1980.

■ The injunctive relief permitted by § 10(*l*) is interlocutory pending a final determination of the unfair labor practice charges before the Board. The prerequisite to the granting of an injunction is a finding by the court that there is "reasonable cause" to believe that a violation of the Act has been committed and that injunctive relief is "just and proper". *Boire v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, etc.,* 479 F.2d 788 (C.A.5, 1973). The court is not called upon to decide whether, in fact, a violation of the Act has been committed; the ultimate determination with respect to this question has been placed by Congress with the Board, subject to review by the courts of appeals pursuant to §§ 10(e) and (f) of the Act. *Squillacote v. Graphic Arts International Union,* 513 F.2d 1017 (C.A.7, 1975); *N. L. R. B. v. Denver Building & Construction Trades Council,* 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); *Madden v. International Organization of Masters, Mates & Pilots,* 259 F.2d 312 (C.A.7, 1958), *cert. denied,* 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229 (1960).

### THE ALLEGED § 8(b)(4)(B) VIOLATIONS

Section 8(b)(4)(i), (ii)(B) of the Act provides, in pertinent part:

(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:

\* \* \* \* \* \*

(B) forcing or requiring any person to cease using, selling, handling, transport-ing, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person . . . Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing . .

In essence, the Act outlaws "secondary" activity when an object of that activity is to force or require anyone to cease doing business with a primary target. Here, the primary target is A.R.S. Builders, Inc.

■ The affidavits on file reflect various inducements, threats and coercive activities used against several of the subcontractors and their employees, and against Burger King. The NLRB maintains that this activity amounts to an illegal "secondary boycott" of A.R.S.: that is, pressure brought to bear not on the primary target in the dispute (A.R.S.), but upon third parties, the objective being to force the third parties to bring pressure on the primary employer to agree to the union's demands. *NLRB v. Local 825, International Union of Operating Engineers AFL–CIO,* 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971); *National Woodwork Manufacturers Association, et al. v. NLRB,* 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). However, if the activity is "primary" in nature, even if it disrupts the target employer's business, it is protected under the Act. *NLRB v. Operating Engineers, supra,* at 303, 91 S.Ct. 402.

The situation here is complicated by the fact that there is a "common situs relationship" on the jobsite: that is, both primary (A.R.S.) and secondary targets (subcontractors) are located at the same site. *NLRB v. Denver Building and Construction Trades Council,* 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

The NLRB has held that picketing at a common-situs is permissible and is considered "primary" if certain conditions are met. *In the Matter of Sailors' Union of the Pacific, AFL and Moore Dry Dock Co.,* 92 NLRB No. 93, p. 547 (1950).

The Board alleges a *Dry Dock* violation here because the picketing was not limited to a place "reasonably close" to a location on the situs of the primary dispute; i. e., a gate which was reserved for A.R.S. and its suppliers. This contention is of doubtful merit, considering the small size of the site, the small number of pickets, the nearness of the pickets to the A.R.S. gate even when they stood next to the "neutral" trailer, and the improper initial marking of the two gates by A.R.S. as "union" and "non-union".

 The court is satisfied, however, from the affidavits and arguments of counsel, that the combined activity of respondents—be it picketing, questioning workers on the site, or calling and writing letters to subcontractors and Burger King—had as its underlying objective the inducement or encouragement of those individuals to cease doing business with A.R.S. The activity did induce employees of Pishny Excavating Co. and Nardi Electric Co. to walk off the jobsite. It also strongly encouraged Burger King to cease doing business with A.R.S. This direct and indirect pressure brought to bear on secondary parties had as its goal their pressuring A.R.S. to agree to the respondents' demands.

Therefore, the court concludes that reasonable cause does exist to believe that there is a violation of § 8(b)(4)(B) of the Act.

### THE ALLEGED § 8(b)(4)(A) VIOLATIONS

If this were simply a (B) case, the union could be ordered to remedy its conduct by discontinuing all inducements and threats, and by maintaining primary common-situs picketing at the site in conformity with the *Dry Dock* standards. However, the NLRB seeks to enjoin all picketing, threats and inducements because their object is not only an illegal secondary boycott under (B), but also has as an object an agreement proscribed by (A) of the Act. Section (A) provides that it is an unfair labor practice for a labor organization or its agents to engage in § 8(b)(4)(i), (ii) activities when the object is "forcing or requiring any em-

ployer . . . to enter into any agreement . . . prohibited by section 8(e)".

The Board has alleged that the agreement (affixed as Exhibit A) proposed to A.R.S. at the December 19th meeting is an agreement "which is prohibited by section 8(e)". The Board contends that an object underlying all of the respondents' activity against A.R.S. was to force A.R.S. to sign the agreement.

Section 8(e) provides, in pertinent part:

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void: Provided, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work . . .

Section 8(e) generally outlaws contracts similar in nature to the agreement in question here. Specifically, it proscribes the so-called "hot cargo" clauses whereby the employer binds itself to subcontract only to those employers having a collective bargaining agreement with a union. This type of contract is viewed as being "secondary" in nature. See *National Woodwork Manufacturers Association v. NLRB, supra; NLRB v. Denver Building and Construction Trades Council, supra;* and *Metro Lathing and Plastering, Inc.,* 240 NLRB No. 52 (1979).

Congress has created an exception to the general 8(e) proscription for the construction industry. Thus, a "hot cargo" agree-

ment that is *per se* violative of 8(e) is legal if between a union and an employer in the construction industry, and if it relates to the subcontracting of work to be done at the site of construction.

Respondents contend that the agreement offered to A.R.S. at the December 19th meeting fits within the exception. The Board argues that, while it appears to comport with the express wording of the proviso in the statute, it falls outside the narrow reading given the proviso in *Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975).

Although *Connell* was an antitrust case where the union raised the 8(e) proviso as a defense, the court's detailed analysis is important here, because the signed agreement in *Connell* is very close to the one the respondents wanted A.R.S. to sign in December. Paragraph # 3 of the agreement in question provides:

> 3. The Company agrees that it will not enter into any business or contractual relationship relating to the contracting, subcontracting or performance of work at the sites of construction, alteration, painting or repair of a building, structure, or other work unless all work performed and to be performed at such site is performed by employers, each of whom has executed a collective bargaining agreement with the appropriate affiliated labor organization having jurisdiction over the class of work performed and to be performed at such construction site.

Like the *Connell* agreement, this one is "secondary" in nature. It does not have any "primary" purpose such as maintaining wage and hour standards consistent with those established in the Racine area, or protecting the jobs of A.R.S. bargaining unit employees. Its sole purpose is to make A.R.S. use only union sub-contractors.

However, the construction industry proviso permits agreements, "pertaining to certain secondary activities on the construction site because of the close community of interests there . . . ". *Woodwork Manufacturers Association v. NLRB, supra,* 386

U.S. at 638–639, 87 S.Ct. at 1265. The *Connell* case placed restrictions on just how far any such "secondary activities on the construction site" agreements could go:

> . . . Instead, we think that its [the construction proviso] authorization extends only to agreements in the context of collective-bargaining relationships and, in light of the congressional references to the *Denver Building Trades* problem, possibly to common-situs relationships on particular jobsites as well. 421 U.S. at 633, 95 S.Ct. at 1840.

This court is satisfied that the agreement here was not "in the context of a collective-bargaining relationship". From the record, it appears that A.R.S. had only one employee on the jobsite. Even if A.R.S. had the few "cleanup" employees suggested by respondents, it would be stretching credulity to believe that the agreement was actually intended to include those people in some sort of present or "pre-hire" collective bargaining relationship. Respondents were not, nor were they in contemplation of becoming, the collective bargaining representative of any A.R.S. employees. Similarly defective is the contention that the agreement was permissible under § 8(f). The agreement was not offered to protect A.R.S. employees whom respondents might represent in the future if elected by the employees as their bargaining unit. See, *Los Angeles Building and Construction Trades Council,* 239 NLRB No. 42.

The agreement here does not limit itself to the "special problems" inherent in a common-situs relationship on a particular jobsite. *Connell, supra,* 421 U.S. at 633, 95 S.Ct. 1830; *Denver Building, supra.*

As in *Connell,* the agreement on its face does not restrict itself to the Burger King jobsite. The agreement in *Connell* covered contracting of work "falling within the normal trade jurisdiction of the union". Paragraph # 1 of the agreement here provides:

> 1. This agreement shall apply to and cover all building and construction work performed by the company within the jurisdiction of any local union affiliated with this Council.

In addition, paragraph # 3, *supra*, refers to the subcontracting of work at the "sites" of construction.

Respondent seeks to distinguish this from the *Connell* situation because the contractor there actually had several jobsites within the contract's jurisdiction. However, the clear language of the agreement here makes the existence of only one A.R.S. jobsite in Racine merely coincidental. Certainly, A.R.S. would have been equally bound whether it had one or ten jobsites in Racine.

■ The agreement here is violative of § 8(e) because it falls outside the construction industry proviso as construed in *Connell*. Since the agreement is prohibited by 8(e), and "an object" of the picketing inducements and coercion was to require A.R.S. to enter into the agreement, the court concludes there is "reasonable cause" to believe that the activities are unfair labor practices in violation of § 8(b)(4)(A).

## THE CONSUMER APPEAL CAMPAIGN

■ Finally, the "charging party" before the Board, A.R.S., seeks an injunction against respondents' participation in a consumer appeal publicity campaign against Burger King.

The long answer to the charging parties' request is that this activity does not, at this time, appear to be "secondary" in nature. The publicity campaigns in Racine and Wisconsin Rapids are no longer directed primarily at A.R.S. The emphasis has now shifted to Burger King—not because it employs A.R.S.—but because of its policy of hiring non-union contractors for many of its construction sites. In its brief, A.R.S. states that respondents' publicity campaign, ". . . is intended to force a change in Burger King's policy in using both union and non-union contractors to build Burger King restaurants . . ." The primary target of the Douglas Avenue jobsite activities was A.R.S. Now it appears that the primary target of the statewide publicity campaign is Burger King and its contracting policies.

The "publicity proviso" in § 8(b)(4) clearly encompasses the consumer activity here. The publicity appears to be "truthful" and the "primary dispute" is with Burger King. The advertising has not exceeded the boundaries of the proviso.

The short answer to the charging party's request is this: A.R.S. is not a party to this action. The NLRB, as petitioner, has not sought the relief requested here by A.R.S. The charging party was specifically denied permission to intervene in this action on January 18. The court will not now elevate A.R.S. to the status of a party by granting it the relief it seeks.

Therefore, the request by the charging party to enjoin the respondents from engaging in a consumer appeal is denied.

For the reasons stated,

IT IS ORDERED that pending a final disposition of the matter before the National Labor Relations Board, the named respondents are enjoined from:

1. Picketing, individually or in common, at the Burger King jobsite, 3454 Douglas Avenue, Racine, Wisconsin.

2. Engaging in any of the activities specified in the separate detailed order signed today and incorporated, along with the findings of fact and conclusions of law, into this decision and order.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on to be heard upon the verified petition of George Squillacote, Regional Director of the Thirtieth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(l) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved herein pending before the Board. All parties were afforded full opportunity to submit evidence in the form of affidavits and documentary exhibits and to submit supporting briefs. All parties were also afforded an opportunity to argue orally on the evidence and the law. The Court has fully con-

sidered the petition, affidavits and exhibits, stipulation of uncontested facts, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

### Findings of Fact

1. Petitioner is Regional Director of the Thirtieth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about December 20, 1979, A.R.S. Builders, Inc. (herein called A.R.S.), pursuant to the provisions of the Act, filed charges with the Board in Cases Nos. 30–CC–352–1 through 30–CC–352–10, inclusive, alleging violations of Section 8(b)(4)(i), (ii)(A) and (B) of the Act.

3. The aforementioned charges were referred to petitioner as Regional Director of the Thirtieth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Each respondent is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondents maintain their principal offices in Kenosha, Milwaukee, or Racine, Wisconsin, and at all times material herein, have been engaged in this judicial district in transacting business and promoting the interests of its employee-members. All 17 respondents set forth in the caption herein are affiliates of respondent Racine Building & Construction Trades Council, AFL–CIO (herein called Council).

(c) At all times material herein, the following-named individuals have occupied the positions set opposite their names, and have been, and are now, agents of each of the respondents, acting on their behalf, within the meaning of Section 2(13), 8(b) and 10(1) of the Act:

Jerry E. Helding—Prior acting and current President, Racine Building & Construction Trades Council, AFL–CIO; and Business Representative, Electrical Workers Union Local No. 430

William Globig—Business Representative, Asbestos Workers Union Local No. 19

E. Hurin—Business Representative, Boilermakers Union Local No. 107

Richard Deinhammer—Business Representative, Bricklayers & Tile Setters Union Local No. 4

Dave Nespoli—Business Representative, Building Laborers Union Local No. 108; and Cement Finishers Union Local No. 845

Earl Tyree—Business Representative, Carpenters Union Local No. 91

Joseph Sofio—Business Representative, Glaziers Local No. 1204

Russell Pride—Business Representative, Iron Workers Union Local No. 8

David Cross—Business Representative, Iron Workers Union Local No. 8

Bruce Ehlers—Business Representative, Lathers Local No. 232

Larry A. Rieckhoff—Business Representative, Operating Engineers Union Local No. 139

Robert Duby—Business Representative, Painters Union Local No. 108

Carroll Hagen—Business Representative, Plasterers Union Local 428

James E. Gain—Business Manager, Plumbers & Steamfitters Union Local No. 118

Martin Halcsik—Business Representative, Plumbers & Steamfitters Union Local No. 118

Cal Brinkman—Business Representative, Roofers Union Local No. 128

Charles Swartz—Business Representative, Sheet Metal Workers Union Local No. 35

Art Lust—Business Representative, Teamsters Union Local No. 43

Ken Stegmann—Member, Building Laborers Union Local No. 108; and Picket

(d) A.R.S., Burger King Corporation (herein called Burger King); Pishny Excavating Co. (herein called Pishny); Nardi Electric Company, Inc. (herein called Nardi); Cumings Electric, Inc.; G & F Excavating, Inc.; J & G Masonary & Builders

Ltd.; Miller Concrete are respectively engaged in commerce, or in industries affecting commerce, within the meaning of Section 2(2), (6) and (7) of the Act.

(e) Since on or about December 7, 1979, respondents have been engaged in a joint labor dispute with A.R.S., a general contractor, and since said date, have jointly picketed the Burger King restaurant jobsite located at 3454 Douglas Avenue, Racine, Wisconsin.

(f) At all times material herein, respondents' only labor dispute has been with A.R.S., and respondents have at no time material had a labor dispute with any other employer named herein.

(g) In furtherance of the labor dispute described above in subparagraph (e), respondents, since December 7, 1979, by picketing and oral inducements have induced and encouraged employees of Nardi and Pishny to engage in strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods.

(h) In furtherance of the labor dispute described above in subparagraph (e), respondents since December 7, 1979, by picketing and oral threats, have threatened, coerced, and restrained Burger King, Nardi and Pishny, and other persons engaged in commerce, or in an industry affecting commerce.

(i) In furtherance of the labor dispute described above in subparagraph (e), respondents, since on or about December 6, 1979, have threatened A.R.S., and other persons engaged in commerce, or in an industry affecting commerce.

(j) An object of the acts and conduct set forth in subparagraphs (g) and (h) was and is to force or require Burger King, Nardi and Pishny, and other persons to cease using, handling, transporting, or otherwise dealing in the products of, and to cease doing business with, A.R.S.

(k) An object of the acts and conduct set forth in subparagraphs (e), (g), (h), and (i) has been and is to induce employees of the neutral employees at the Burger King job-site to cease work for their employers and/or to force and require A.R.S. to cease work with nonunion employers and to require A.R.S. to enter into an agreement with respondents which is prohibited by Section 8(e) of the Act.

5. The acts and conduct of respondents set forth in Findings of Fact, paragraph 4, subparagraphs (e), (f), (g), (h), (i), (j), and (k) above, occurring in connection with the operations of respondents and A.R.S. being the jobsite general contractor, have a close, intimate, and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

6. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth in Findings of Fact, paragraph 4, subparagraphs (e), (f), (g), (h), (i), (j) and (k) above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties, and of the subject matter of this proceeding, and under section 10(*l*) of the Act, is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents are labor organizations within the meaning of Section 2(5), 8(b) and 10(*l*) of the Act.

(b) Jerry E. Helding, William Globig, E. Hurin, Richard Deinhammer, Dave Nespoli, Earl Tyree, Joseph Sofio, Russell Pride, David Cross, Bruce Ehlers, Larry A. Rieckhoff, Robert Duby, Carroll Hagen, James E. Gain, Martin Halcsik, Cal Brinkman, Charles Swartz, Art Lust, and Ken Stegmann are agents of respondents within the meaning of Section 2(13), 8(b) and 10(*l*) of the Act.

(c) A.R.S.; Burger King; Pishny; Nardi; Cumings Electric, Inc.; G & F Excavating, Inc.; J & G Masonary & Builders Ltd.; and Miller Concrete are engaged in commerce, or in an industry affecting commerce, within the meaning of Section 2(6) and (7) of the Act.

(d) Respondents have engaged in unfair labor practices within the meaning of Section 8(b)(4)(i), (ii), subparagraph (A) and (B) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents Racine Building & Construction Trades Council, AFL–CIO; Asbestos Workers Union Local No. 19; Boilermakers Union Local No. 107; Bricklayers & Tile Setters Union Local No. 4; Building Laborers Union Local No. 108; Carpenters Union Local No. 9; Cement Finishers Union Local No. 845; Electrical Workers Union Local No. 43; Glaziers Union Local No. 1204; Iron Workers Union Local No. 8; Lathers Union Local No. 232; Operating Engineers Union Local No. 139; Painters Union Local No. 108; Plasterers Union Local 428; Plumbers & Steamfitters Union Local No. 118; Roofers Union Local No. 128; Sheet Metal Workers Union Local No. 35; and Teamsters Union Local No. 43, their officers, representatives, agents, servants, employees, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation or repetition of the acts and conduct set forth in Findings of Fact, paragraph 4, subparagraphs (e), (f), (g), (h), (i), (j), and (k) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts, individually and/or jointly, and conduct in the past.

## ORDER GRANTING TEMPORARY INJUNCTION

This cause came to be heard upon the verified petition of George Squillacote, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending final disposition of the matters involved pending before said Board and upon affidavits, exhibits, stipulation of uncontested facts and respondents' filing an answer. The Court, upon consideration of the pleadings, evidence, briefs, arguments of counsel and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that respondents have engaged in, and are engaging in, conduct violative of Section 8(b)(4)(i), (ii)(A) and (B) of the National Labor Relations Act, that such acts and conduct are affecting commerce within the meaning of Section 2(6) and (7) of the Act, that such acts and conduct will likely be repeated or continued unless enjoined and that to issue injunctive relief is both just and proper under the facts and circumstances of this case.

Now, therefore, upon the entire record, it is

ORDERED, ADJUDGED AND DECREED that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondents Racine Building & Construction Trades Council, AFL–CIO; Asbestos Workers Union Local No. 19; Boilermakers Union Local No. 107; Bricklayers & Tile Setters Union Local No. 4; Building Laborers Union Local No. 108; Carpenters Union Local No. 9; Cement Finishers Union Local No. 845; Electrical Workers Union Local No. 43; Glaziers Union Local No. 1204; Iron Workers Union Local No. 8; Lathers Union Local No. 232; Operating Engineers Union Local No. 139; Painters Union Local No. 108; Plasters Union Local 428; Plumbers & Steamfitters Union Local No. 118; Roofers Union Local No. 128; Sheet Metal Workers Union Local No. 35; and Teamsters Union Local No. 43, their officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with them be, and they hereby are, enjoined and restrained from:

(a) Any and all picketing by any of respondents, were done individually or as a common and joint venture, of the Burger King jobsite located at 3454 Douglas Avenue, Racine, Wisconsin.

(b) In any manner or by any means, including picketing, orders, directives, instructions, requests or appeals, however given, made or imparted, or by like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in or inducing or encouraging individuals employed by Nardi Electric Company, Inc., Pishny Excavating Co., or by any other person engaged in commerce or in an industry affecting commerce, to engage in a strike or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials or commodities or to perform any service, or in any manner or by any means, threatening, coercing or restraining Burger King Corporation, Nardi Electric Company, Inc., Pishny Excavating Co. or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is forcing or requiring any person to cease using, selling, handling, transporting or otherwise dealing in the products of and to cease doing business with A.R.S. Builders, Inc., or to force A.R.S. Builders, Inc. to cease using, selling, handling, transporting or otherwise dealing in the products of and to cease doing business with other persons, or to force and require A.R.S. Builders, Inc. to enter into an agreement which is prohibited by Section 8(e) of the Act.

IT IS FURTHER ORDERED that service of a copy of this order be forthwith made by a United States Marshal upon respondents Racine Building & Construction Trades Council, AFL–CIO; Asbestos Workers Union Local No. 19; Boilermakers Union Local No. 107; Bricklayers & Tile Setters Union Local No. 4; Building Laborers Union Local No. 108; Carpenters Union Local No. 9; Cement Finishers Union Local No. 845; Electrical Workers Union Local No. 43; Glaziers Union Local No. 1204; Iron Workers Union Local No. 8; Lathers Union Local No. 232; Operating Engineers Union Local No. 139; Painters Union Local No. 108; Plasterers Union Local 428; Plumbers & Steamfitters Union Local No. 118; Roofers Union Local No. 128; Sheet Metal Workers Union Local No. 35; and Teamsters Union Local No. 43, in any manner provided in the Federal Rules of Civil Procedure for the United States District Courts, or by registered mail, and that proof of such service be filed herein.

EXHIBIT A

## LABOR AGREEMENT

THIS AGREEMENT entered into this _____ day of _____, 196___, by and between _____ hereinafter known as the "Company" and RACINE BUILDING AND CONSTRUCTION TRADES COUNCIL AFL-CIO, hereafter known as the "Council", to-wit:

1. This agreement shall apply to and cover all building and construction work performed by the company within the jurisdiction of any local union affiliated with this Council.

2. The company agrees to abide by all of the terms and conditions of the current agreements of the respective crafts employed on the job sites, including wages, hours, working conditions, health and welfare benefits, pension benefits, and any other benefits specified in those agreements.

3. The Company agrees that it will not enter into any business or contractual relationship relating to the contracting, subcontracting or performance of work at the sites of construction, alteration, painting or repair of a building, structure, or other work unless all work performed and to be performed at such site is performed by employers, each of whom has executed a collective bargaining agreement with the appropriate affiliated labor organization having jurisdiction over the class of work performed and to be performed at such construction site.

4. (a) All present employees who are members of an affiliated Local Union on the effective date of this section shall remain members of such Local Union in good standing as a condition of employment. All present employees who are not members of an affiliated Union, and all employees who may hereafter be hired shall become and remain members in good standing of the appropriate affiliated Local Union having jurisdiction over their work as a condition of employment after the seventh day following the beginning of such employment or following the effective date of this agreement, whichever is later.

(b) The Company agrees to notify the appropriate affiliated Local Union of any and all opportunities for employment with such employer, and the affiliated Local Unions shall immediately refer qualified applicants for employment. The Company agrees to sign a collective bargaining agreement with each appropriate Local Union whose members are employed by the Company.

(c) In those instances where subsections (a) and (b) may not be validly applied the employer agrees to recommend to all employees that they become members of the appropriate affiliated Local Union and maintain such membership during the life of this Agreement, to refer new employees to the affiliated Local Union representatives, and to recommend to delinquent members that they pay their dues, since they are receiving the benefits of this contract.

5. This Agreement shall remain in full force and effect until the _____ day of _____, 19____, inclusive, and shall automatically renew itself from year to year thereafter unless at least sixty (60) days before the termination date or any anniversary thereof either party gives notice to the other of desire to amend, add to or terminate this Agreement.

If the parties do not arrive at a mutually satisfactory agreement on the proposed amendments or additions, by the termination date, or anniversary thereof, this Agreement shall continue in full force and effect until such time as the party giving the above notice terminates this Agreement on five (5) days written notice.

COMPANY

RACINE BUILDING AND
CONSTRUCTION TRADES COUNCIL AFL-CIO

President